IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD HART,<br>　　　　　　Plaintiff,<br>　vs.<br>CSP-SOLANO, et al.,<br>　　　　　　Defendants. | Case No. CIV S-02-0577 JKS-P<br><br>O R D E R |

　　　　This is a § 1983 action brought by prisoner Plaintiff Richard Hart challenging grooming regulations that require him to cut his hair. Hart alleges that the regulations infringe on an oath he made to God as part of his Nazarite Christian faith not to cut his hair and thus violate his First Amendment right of freedom of religion and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). Currently before the Court is a motion for summary judgment by Defendants, alleging that the California Department of Corrections ("CDC") grooming regulations do not violate RLUIPA. *See* Docket Nos. 45 (Mot.); 52 (Opp'n). This Court has jurisdiction. 28 U.S.C. §§ 1331, 1343(a)(3).

**FACTUAL AND PROCEDURAL BACKGROUND**

　　　　Hart is incarcerated in California State Prison–Solano. CDC grooming standards require male inmates' hair to be no "longer than three inches" and to "not extend over the eyebrows or below the top of the shirt collar while standing upright." Cal. Code Regs. tit. 15, § 3062(e). In addition, "[h]air shall be cut around the ears, and sideburns shall be neatly trimmed, and shall not extend below the mid-point of the ear." *Id*.

Hart has been a member of the Nazarite faith since 1993.  Docket No. 52 at 3.  He claims that he took an oath to not cut his hair when he separated from his family "to make amends for the sins of his past."  *Id*.  He cites to the Christian Bible to support his oath.  *Id*. at 6.  He alleges that the CDC policy has substantially burdened the practice of his religion.  Specifically, Hart points to his receipt of at least nine disciplinary reports, his loss of prison employment, his exclusion from "programming (C-Status),"[1] and the loss of other privileges, including commissary, telephone, and packages.  *Id*. at 6.  He asks the Court to enjoin Defendants from enforcing the grooming policy and for damages against specific individuals.  It is these claims for which Defendants have moved for summary judgment.

## DISCUSSION

### I.   Standards for summary judgment

The standards for summary judgment are well settled.  Federal Rule of Civil Procedure 56 dictates that "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."  Fed. R. Civ. P. 56(a); *see also* Fed. R. Civ. P. 56(b) (providing the same standard for parties defending a claim).  Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court will construe all evidence and draw all evidentiary inferences in favor of the nonmoving party.  10A Charles Alan Wright *et al*., *Federal Practice & Procedure* § 2727, at 459 & n.5 (3d ed. 1998) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)).

---

[1] Placement on "C-Status" prevents inmates from earning good-time credits, among other things.  *See* Cal. Code Regs. tit. 15, §§ 3062(m) & 3315(f).  Typically, violation of the grooming standards is an administrative violation.  Cal. Code Regs. tit. 15, § 3314(a)(3)(L).  However, repeated administrative violations can result in what is classified as a "serious violation," *see* Cal. Code Regs. tit. 15, § 3315(a)(3)(M), which can then result in a C-Status classification.

ORDER

A dispute over a "genuine" material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. The nonmoving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion. *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").

## II.  RLUIPA Standards

Prior to the enactment of RLUIPA, Congress enacted the Religious Freedom Restoration Act of 1993 ("RFRA"). *See* 42 U.S.C. § 2000bb-1, *et seq*. RFRA allowed government to "substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b)(1)–(2). However, lacking a substantive grounding in the Commerce Clause to the United States Constitution, the United States Supreme Court held that RFRA exceeded the bounds of Congress's remedial powers under the Fourteenth Amendment. *City of Boerne v. Flores*, 521 U.S. 507, 532–36 (1997). Congress responded to the invalidation of RFRA with RLUIPA, which is less expansive than its predecessor. *See Cutter v. Wilkinson*, 125 S.Ct. 2113, 2118 (2005). Specifically applicable to this case, § 3 of RLUIPA applies to the exercise of religion by institutionalized persons. *See* 42 U.S.C. § 2000cc-1(a). The Supreme Court has recently held that RLUIPA does not violate the Establishment Clause of the United States Constitution. *Id*. at 2117.

RLUIPA provides that the Government cannot impose a substantial burden on an institutionalized person's exercise of his religion unless the Government (1) has a compelling interest and (2) uses the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)–(2). RLUIPA requires plaintiffs to produce "prima facie evidence to support a claim alleging a violation of the Free

ORDER

Exercise Clause ." 42 U.S.C. § 2000cc-2(b). However, to rebut such evidence the government "shall bear the burden of persuasion on any element of the claim, except that plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." *Id*. RLUIPA further makes it clear that Courts shall construe its terms "in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g).

### III.     Compelling Interest/Least Restrictive Means Test

Initially, the State makes three arguments to justify the grooming regulations. First, they argue that they have not substantially burdened the exercise of Hart's religion. Docket No. 45 at 7. This argument is predicated on the State's assertion that Hart's religion does not require him to leave his hair uncut and that even if it did, Hart has not shown that the religion would not take his status as a prisoner into account to essentially excuse his compliance with the grooming regulations. Second, the State contends that the CDC has a compelling interest—the safety of the public and prison employees—in maintaining the grooming standards.[2] *Id*. at 8–9. Long hair allows prisoners to conceal weapons and quickly alter their appearance to aid in escape. Additionally, the State argues that guards familiarize themselves with prisoners' appearances, that guards must be able to quickly and repeatedly identify prisoners, and that a prisoner's ability to quickly alter his appearance puts the safety of guards in jeopardy, as well as that of other prisoners.

Finally, it argues that the grooming standards are the least restrictive means to meet the safety goals. *Id*. at 9–10. In making this argument, the State points out that Congress intended prison officials have substantial discretion in determining the best way to implement penological policies. Consistent with this approach, CDC officials determined that the hair length restrictions were necessary to facilitate the quick examination of prisoners, that no alternatives were less burdensome, and that exceptions to the rule made enforcement difficult and engendered resentment

---

[2] The State makes the additional assertion that the grooming standards promote personal hygiene. However, the remainder of the State's arguments do not point to why this is the case. The arguments instead focus on the safety issues discussed above.

ORDER

in other prisoners.  In the alternative, the State argues that even if the policy violates RLUIPA, liability for damages against the individual Defendants cannot lie because they are entitled to qualified immunity.  *Id*. at 10–11.

Hart responds by disputing the safety concerns raised by the State.  He points out that taking two pictures of an inmate—one with the inmate's long hair down and one with it up—would solve most of the problems to which the State points, such as the difficulty of detection when an inmate escapes and alters his appearance by cutting his hair.  Docket No. 52 at 3–6.  He points out that his religious beliefs are supported by his reading of the Christian Bible and that he has repeatedly been the subject of disciplinary action as the result of following his beliefs.  In response to the State's argument that the grooming restrictions are the least restrictive means of enforcing prison safety issues, he additionally points out that prison officials already make an exception to the policy for Muslim men.  *Id*. at 7–8.  He points to a preliminary injunction issued by Judge Karlton in the case of "*Mayweather v. Newland*" that allowed Muslim men to maintain half-inch beards.[3]  *Id*.  And finally, he argues that Defendants are not entitled to qualified immunity because he informed them that they were violating the free exercise of his religion in violation of the Constitution.

As a starting point, the Court declines to address the issue of whether Hart's religion proscribes the cutting of his hair.  "Determining whether a belief or practice is religious rather than secular is 'a most delicate question.'"  *Swift v. Lewis*, 901 F.2d 730, 732 (9th Cir. 1990) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1974)).  Hart provides evidence that his belief is grounded in the Christian Bible.[4]  The State does not seriously dispute this assertion, other than to state in conclusory fashion that the Nazarite faith does not proscribe hair cutting and that Hart has not

---

[3] While Hart does not include what he calls the "unpublished order" with his motion, it appears that Judge Karlton included the injunction in a published decision issued after Hart filed his opposition.  In *Mayweathers v. Terhune*, 328 F. Supp. 2d 1086 (E.D. Cal. 2004), Judge Karlton enjoined the CDC from enforcing grooming regulations that prevented Muslim inmates from having half-inch beards, concluding that the prohibition violated the least restrictive means test of RLUIPA.  *Id*. at 1095–96.

[4] Specifically, he points to Numbers 6:5.  Docket No. 52 at 6.

ORDER

shown that his faith would not except him from any requirements because of his incarceration.[5] Suffice it to say that, as described in more detail below, enough courts have recognized Hart's faith and addressed the merits of similar grooming restriction challenges for the Court to conclude that Hart has sufficiently raised a legitimate religious issue. *Cf. Hamilton v. Schriro*, 74 F.3d 1545, 1552 (8th Cir. 1996) (assuming without evidence from prisoner that grooming regulations substantially burdened plaintiff in RFRA challenge); *Harris v. Chapman*, 97 F.3d 499, 503 (11th Cir. 1996) (same). Further, Hart's history of punishment, which the State does not challenge, as well as the relevant California regulations punishing repeated violations and prescribing progressive punishment, provide sufficient evidence that the CDC policy substantially impairs Hart's religious beliefs. *See* Cal. Code Regs. tit. 15, §§ 3314(a)(3)(L) & 3315(a)(3)(M).

However, the Court recognizes the compelling interest that the CDC has in keeping the public, as well as its employees and other inmates, safe. Stated simply, "prison security is a compelling state interest." *Cutter*, 125 S.Ct. at 2124 n.13. Numerous courts that have addressed grooming challenges brought by members of the Nazarite religion have recognized these safety interests and rejected the suits. *See, e.g., Campbell v. Purkett*, 957 F.2d 535, 536–37 (8th Cir. 1992); *Scott v. Miss. Dept. of Corr.*, 961 F.2d 77, 80 (5th Cir. 1992); *see also Pollock v. Marshall*, 845 F.2d 656, 658–59 (6th Cir. 1988) (rejecting hair grooming challenge raised by Lakota American Indians for concerns including, among others, safety and identification). While these decisions were decided under the more forgiving *Turner v. Safley*, 482 U.S. 78 (1987), standard,[6] they are notable for the notion that identification and the hiding of contraband, such as weapons or drugs, are legitimate concerns. The Ninth Circuit does have one case concluding that grooming standards did

---

[5] RLUIPA and the Supreme Court allow inquiry into the sincerity of a prisoner's belief, which the Supreme Court finds to be a separate question from an impermissible inquiry into whether the belief is "central" to a prisoner's religion. *Cutter*, 125 S.Ct. at 2124 n.13. In the current case the Court has no reason to doubt the sincerity of Hart's belief.

[6] Prior to the enactment of RFRA, a prison regulation that impinged on an inmate's constitutional rights was valid "if it [was] reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

ORDER

not meet the lesser *Turner* standard. *See Swift v. Lewis*, 901 F.2d 730, 731–32 (9th Cir. 1990). However, the Ninth Circuit's holding was based on the State's failure to provide *any* evidence to substantiate its arguments supporting the grooming regulation; a failure not present in the instant case.[7]

More recently, courts have upheld hair grooming restrictions under RFRA based on similar safety concerns. *See, e.g., Diaz v. Collins*, 114 F.3d 69, 72–73 (5th Cir. 1997); *Hamilton*, 74 F.3d at 1554–55; *Harris*, 97 F.3d at 503–04. The Court cannot see why those concerns are any less valid under RLUIPA than under the former standards, especially when the cases decided under RFRA used the same compelling interest standard in reviewing inmate claims. The Court therefore finds that the State has stated a valid compelling interest in promulgating the grooming restrictions.

Similarly, the Court is satisfied that the current policy is the least restrictive means to meet safety concerns. The Court is required to give due deference to prison officials in designing procedures to meet legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).[8] As the State points out, the CDC considered other options and found them insufficient. Like other courts that have addressed this issue, this Court is unable to think of other procedures that would adequately meet the compelling interests identified above, nor has Hart suggested any.

---

[7] Examples of evidence that the State presents along with its motion include a declaration from a prison administrator, the comments and history of the grooming policy, numerous photos of inmates before and after having their hair cut, and the history of numerous escapees and how their appearance aided their attempts. *See* Docket No. 46.

[8] The Court recognizes that the standard of discretion originally outlined by *O'Lone* has been superceded by statute. However, Congress has consistently indicated, in passing both RFRA and RLUIPA, that giving deference to the experience and expertise of prison officials is still appropriate. Within RLUIPA's Congressional record, Congress specifically noted that it expected federal courts to continue giving "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter*, 125 S.Ct. at 2123 (quoting Joint Statement 146 Cong. Rec. S7775 (quoting S.Rep. No. 103-111, p. 10 (1993), U.S. Code Cong. & Admin. News 1993, pp. 1892, 1899, 1900))) & 2124 n.13. *See also Hamilton*, 74 F.3d at 1552–53 (outlining history of deferential discretion to prison officials under *O'Lone* and its continued applicability under RFRA, as found in the Congressional record of the Act).

ORDER

*See*, *e.g.*, *Harris*, 97 F.3d at 504 (finding in RFRA case that, like other courts to which it cited, the court was unable "to suggest any lesser means than a hair length rule for satisfying" legitimate safety interests). Even if Hart's suggestion of double photos for identification completely satisfied the State's identification concern—a suggestion on which the Court harbors doubts[9]—it does nothing to alleviate contraband safety concerns. And, unlike female inmates, who are allowed longer hair and to whom Hart points in arguing that contraband is an overblown issue, the CDC specifically considered the needs of female and male inmates. In justifying the different standards, the CDC explained that male inmates had a greater history of escape and that female inmates had "not been known to produce the weaponry or attack instruments that male inmates have." Docket No. 46, Ex. B (Int. stmt. of reasons).

  The Court recognizes that Judge Karlton issued an injunction in the case of beards on male Muslim inmates. But that injunction only allowed half-inch beards, specifically finding it plausible that cutting longer beards or very long hair could aid an inmate to elude capture while half-inch beards likely could not. *Mayweathers*, 328 F. Supp. 2d at 1095; *see also Fromer v. Scully*, 874 F.2d 69, 74 (2d Cir. 1989) ("It is certainly not irrational to believe that a full beard, which may well extend for significant lengths sideways from the cheeks as well as downwards from the chin, may impede identification more than a one-inch beard."). It seems reasonable as well to conclude that contraband could more likely be hidden in longer beards; a task made much more difficult in the case of half-inch beards. Consistent with Judge Karlton's limited approach, the Court is satisfied that the current regulation strikes an adequate balance. It does not require inmates to shave their heads. It allows hair lengths up to three inches. Longer hair is a greater concern from the standpoint of concealing weapons or contraband just as longer beards would be.

  Like the Eighth Circuit in *Scott*, the Court appreciates the fact that requiring Hart to cut his hair is more than a cosmetic punishment. 961 F.2d at 82. The Court assumes that Hart has made a

---

[9] For example, dual pictures would provide limited help in helping guards locate an inmate that wanted to quickly and momentarily alter his appearance *in* prison. The guards would be forced to turn to photographic records of some sort rather than quickly relying on their own recognition of an inmate's appearance.

ORDER

religious commitment in not cutting his hair that helps to alleviate his separation from his family and to recognize past offenses. However, as the *Scott* court explained, "the cropping of that hair is a temporal symbol of the crimes he has committed;" crimes that now necessitate his confinement in prison. While inmates continue to retain constitutional rights when incarcerated, the free exercise of those rights is necessarily more circumscribed than it would otherwise be were they not in prison.

In summary, the challenged regulation does not violate RLUIPA. The State has a compelling interest in the regulation and the means used are the least restrictive. Accordingly, the State's motion for summary judgment will be granted. A separate judgment will issue dismissing Hart's claims with prejudice.

**IT IS THEREFORE ORDERED:**

The motion for summary judgment at **Docket No. 45** is **GRANTED**.

Dated at Anchorage, Alaska, this   8th   day of July 2005.

/s/ James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**
United States District Judge

ORDER